IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES HALL, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO.: 2:13-cv-663 |
| ) | (WO - Publish) |
| JIM BENNETT, Alabama Secretary, ) | |
| of State, in his official capacity, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM OPINION AND ORDER**

Now before the Court is Defendant Secretary Jim Bennett's ("Bennett") Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #41) filed on December 26, 2013. Bennett contends that the claims in this matter are moot because the subject election has concluded, and, therefore, the Court no longer has subject matter jurisdiction to hear the case. The Court disagrees and, for the reasons set forth below, finds that Bennett's motion is due to be DENIED.

This is a ballot access case filed by two prospective independent candidates, James Hall and N. C. "Clint" Moser, Jr. (collectively, "Plaintiffs"), who were unable to meet state signature requirements and, as a result, were precluded from running in the December 2013 special election to fill a vacant United States House of Representatives seat in Alabama's First Congressional District (hereinafter, the "Special Election"). Plaintiffs bring as applied and facial challenges to the constitutionality of Alabama's ballot access scheme as applied

to special elections, arguing that the 3% signature requirement coupled with the truncated time frame inherent in a special election imposes an unconstitutionally severe burden on their First Amendment rights to engage in political speech.[1]  In their First Amended Complaint, Plaintiffs sought a preliminary injunction requiring the State to place Plaintiffs on the ballot in addition to declaratory relief and a permanent injunction against future enforcement of Alabama's ballot access laws as they apply to special elections.  After a hearing on November 19, 2013, the Court denied Plaintiffs request for a preliminary injunction or temporary restraining order.  The Eleventh Circuit Court of Appeals affirmed the Court's ruling on December 12, 2013. (Doc. #39.)  The Special Election was then held on December 17, 2013, and Congressman Bradley Byrne was duly elected.  Bennett filed the instant motion to dismiss on December 26, 2013, arguing that, because the Special Election had been held, Plaintiffs claims are moot and the Court should dismiss the action for lack of subject matter jurisdiction.  (Doc. #41.)

It is undisputed that the case is moot as to Plaintiffs' claims for a preliminary injunction. However, a case may be moot as to some issues and not as to others. *See Powell v. McCormack*, 395 U.S. 486, 497 (1969). Accordingly, the issue before the Court is whether Plaintiffs' claims for a permanent injunction and declaratory judgment are mooted by the passage of the Special Election.

---

[1] Plaintiffs also list several other side-effects of the truncated time frame that further burden their speech, including the lack of "ramp up" time to organize a signature drive and the inability to campaign because they are having to devote all resources to obtaining signatures.

>As the Eleventh Circuit has explained:
>
>>The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy. A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. As [the Eleventh Circuit] has explained, put another way, a case is moot when it no longer presents a live controversy with respect to which the Court can give meaningful relief. If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. Indeed, dismissal is required because mootness is jurisdictional. Any decision on the merits of a moot case or issue would be an impermissible advisory opinion.

*Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (alteration to original) (citations and internal quotation marks omitted). The passage of an election does not necessarily render a ballot access challenge moot. *See, e.g.*, *Norman v. Reed*, 502 U.S. 279, 287–88 (1992); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969). After an election is held, a controversy is not considered moot if the issue presented is one that is capable of repetition, yet evading review. *See S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). A controversy is capable of repetition, yet evading review where: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147 (1975) (per curiam); *see also Sierra Club v. Martin*, 110 F.3d 1551, 1554 (11th Cir. 1997). The parties do not dispute whether the first prong has been met, and the Court agrees that it has. *See, e.g.*, *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (citing *Morse v. Republican Party of Va.*, 517 U.S. 186, 235 (1996); *Reed*, 502 U.S. at 287–88; *Speer v. City*

3

*of Oregon*, 847 F.2d 310, 311 (6th Cir. 1988) ("Challenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible the occurrence of a relevant election.")). The parties dispute only whether the second prong—whether there is a reasonable expectation that the current dispute will recur—is met.

To satisfy the second prong of the test, there must only be a reasonable expectation or a demonstrated probability of reoccurrence of the controversy, but a party need not establish that the recurrence was more probable than not. *See Honig v. Doe*, 484 U.S. 305, 318 (1988) ("Our concern in these cases, as in all others involving potentially moot claims, was whether the controversy was *capable* of repetition and not, as the dissent seems to insist, whether the claimant had demonstrated that the recurrence of the dispute was more probable than not."). However, "[t]he remote possibility that an event might recur is not enough to overcome mootness, and even likely recurrence is insufficient if there would be an ample opportunity for review at that time." *Al Najjar*, 273 F.3d at 1336. Courts routinely find that election law disputes satisfy the second prong of the "capable of repetition, yet evading review" test. Indeed, the Eleventh Circuit has stated that "it is well settled that ballot access challenges fall under the 'capable of repetition yet evading review' exception to the mootness doctrine." *Swanson v. Worley*, 490 F.3d 894, 903 (11th Cir. 2007).[2] This is because even

---

[2] It is worth noting that *Swanson* also involved a challenge to the same signature requirement challenged by Plaintiffs in this case. In *Swanson*, however, the challenge was brought in the context of a regularly scheduled election, whereas the challenge in this case is in the context of, and as applied to, a special election.

though an election has concluded, the burden imposed by a challenged ballot access scheme remains the same for future elections and, therefore, continues to adversely affect the parties' rights and interests. *See, e.g.*, *Moore*, 394 U.S. at 816 ("But while the 1968 election is over, the burden . . . allowed to be placed on the nomination of candidates for statewide offices remains and controls future elections . . ."); *Reed*, 502 U.S. at 288 ("There would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints if we should fail to resolve the constitutional issues that arose in 1990.").

Bennett argues that the second prong has not been met because, in contrast to regularly scheduled elections, there is not a reasonable expectation that there will be future special elections with signature requirements that impose equally severe burdens on Plaintiffs' First Amendment rights. Unlike regularly scheduled elections, special elections are only held when an elected office becomes vacant mid-term. Ala. Code § 17-15-1. Furthermore, whereas independent candidates have a statutorily set time-frame to meet the 3% signature requirement in regularly scheduled elections, in special elections, Alabama law vests power with the Governor to set elections dates and petition deadlines. *See id*. When a vacancy arises mid-term and a special election is held, the amount of time a prospective independent candidate has to meet the signature requirement varies depending on how the Governor chooses to structure the election. Because the truncated time frame to gather signatures is set by the Governor, and, therefore, will likely be different for each future special election, Bennett argues that Plaintiffs' claims are not capable of repetition, and any possibility that a future special election would impose the same constitutional burden is too

5

remote, speculative or theoretical.

In support of his position, Bennett cites to two cases, both of which the Court finds distinguishable from the instant case. First, Bennett cites to *Super Tire Engineering Company v. McCorkle*, 416 U.S. 115 (1974). In *Super Tire*, the Supreme Court held that the termination of a strike did not moot the employers' challenge to a New Jersey statute that extended public assistance benefits to striking workers. *Id.* at 116. In reaching this decision, the Supreme Court distinguished its holdings in two prior cases, *Oil Workers Union v. Missouri*, 161 U.S. 363 (1960), and *Harris v. Battle*, 348 U.S. 803 (1954), which involved challenges to state statutes that authorized the Governor to take immediate possession of a public utility in the event of a strike. The Court explained that, whereas in *Super Tire* the policy of extending benefits was "fixed and definite" and would necessarily recur in the event of a strike, in *Oil Workers* and *Harris*, the challenged government action depended on "the distant contingencies of another strike and the discretionary act of [the Governor]." *Super Tire*, 416 U.S. at 123. Due to these contingencies, the Court characterized the threat of government action in *Oil Workers* and *Harris* as "two steps removed from reality" and "so remote and speculative that there was no tangible prejudice to the existing interests of the parties." *Id.* (citing *Oil Workers*, 361 U.S. at 371).

Bennett contends that, like *Oil Workers* and *Harris*, the threat of future injury in this case is also "two steps removed from reality." According to Bennett, in order for the harm to recur, "Plaintiffs need both a special election (a strike) and the Governor to exercise his discretion in a particular manner (a seizure)" but that the likelihood of these "distant

contingencies" occurring is too remote and speculative. (Doc. #41.) Moreover, Bennett argues that the specific petition deadline, and, consequently, the exact number of days given to independent candidates to collect signatures, is left to the Governor's discretion and making it reasonable to expect that same or similar time frames will be imposed on candidates in future special elections.

Bennett's likening of *Oil Workers* and *Harris* to this case is misplaced.[3]  While the potential harm in this case is contingent on the occurrence of another special election, and the exact time frame in which a potential independent candidate has to comply with the signature requirement is contingent on the Governor's discretion, it can hardly be said that these contingencies are "distant."  *See Super Tire*, 416 U.S. at 123.  Alabama has a long history of holding special elections to fill vacant state and federal legislative positions, and the statute requires the Governor to hold a special election should a vacancy arise.  *See* Ala. Code § 17-15-1; *see also* State of Alabama Proclamation (Doc. #23-4) ("under the Constitution and laws of the State of Alabama, it is my duty as Governor, by proclamation, to call and set the dates of all related special elections . . ."); Second Declaration of Richard Winger (Doc. #19-1) (listing Special Elections held in Alabama for Vacant United States Congressional seats since 1893).  Once the special election is called, the Governor must set the election schedule and petition deadlines for independent candidates.  *See* Ala. Code § 17-

---

[3] The Court also notes that *Oil Workers* and *Harris* are further distinguishable from this case because they do not deal with election law challenges, much less suits involving ballot access or signature requirements.

7

15-2. This, by itself, distinguishes *Oil Workers* and *Harris* from the present case because the challenged statute here does not give the Governor discretion over whether to call and to set deadlines in a special election when a vacancy arises. Thus, the occurrence of a special election under these circumstances is a much less "distant contingency" than the seizure of an industry. Moreover, these special election petitioning deadlines will necessarily require independent candidates to submit petitions in a time frame that is shorter than they would have had in a regularly scheduled election.[4] Therefore, a similar infringement on Plaintiffs' First Amendments rights can be reasonably expected regardless of how the Governor uses his discretion in setting the actual deadlines.

Further, it is not necessary for Plaintiffs to establish a reasonable probability that a future truncated special election schedule will involve the exact same number of days as in this Special Election, or that a potential future special election will be held to fill a vacancy in Alabama's First Congressional District. To impose this requirement would effectively bar relief for alleged constitutional violations arising from Alabama's ballot access laws as applied to special elections because it is highly unlikely independent candidates will be subject to the exact same petition deadlines as Plaintiffs were in this case. *See Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1216 n.5 (11th Cir. 2009) (citing *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007) ("Requiring repetition of every 'legally relevant' characteristic of an as-applied

---

[4] Courts have characterized the time frame for independent candidates to petition in a regularly scheduled election as being "unlimited." *See Worley*, 490 F.3d at 904.

challenge—down to the last detail—would effectively overrule this statement by making this exception unavailable for virtually all as-applied challenges."). All that is required is "governmental action directly affecting, and continuing to affect, the behavior of citizens in our society." *Super Tire*, 416 U.S. at 126. In the Court's opinion, Plaintiffs have met this requirement because they have established a reasonable expectation that future special elections in Alabama will burden the same constitutional rights and interests at issue here, as there is a demonstrated probability that the government will hold future special elections where independent candidates must comply with Alabama's 3% signature requirement under a truncated petition deadline.

Bennett's reliance on *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 188 (1979), is also misplaced. In that case, the Chicago Election Board (Chicago Board) set the signature requirement and filing deadlines applicable to independent candidates and new political parties in the January 1977 special mayoral election to fill the vacancy created by the death of Mayor Richard J. Daley. An independent candidate, new political parties, and voters sued arguing (1) that the discrepancy between the signature requirements for state and city elections violated equal protection and (2) that the shortened petition deadlines were unconstitutionally burdensome. *Id.* at 178. The Chicago Board entered into a settlement agreement with Plaintiffs on the second claim. *Id.* at 180. The State Board of Education (State Board) was excluded from the settlement and challenged the Chicago Board's authority to enter into it. *Id.* at 180. Both the Seventh Circuit Court of Appeals and the Supreme Court dismissed the State Board's claim as moot because the

9

election had concluded.  *Id.*  The Supreme Court reasoned that although the issue evaded review, there was "no evidence creating a reasonable expectation that the Chicago Board will repeat its purportedly unauthorized actions in subsequent election."  Moreover, "[t]he Chicago Board's entry into a settlement agreement reflected neither a policy it had determined to continue nor even a consistent pattern of behavior."  *Id.* at 188.  "And the Chicago Board's action patently was not a matter of statutory prescription, as was the case in other election decisions . . ." *Id.* (internal citations omitted).

Bennett argues that the Court's reasoning in *Illinois State Board of Education* further supports his argument that because the specific deadlines are set by the Governor, and therefore, are "not a matter of statutory prescription," it cannot reasonably be expected for the current controversy to recur in the future.  The Court rejects this argument for much the same reasons it rejected adopting the logic in *Oil Workers* and *Harris*.  Because special elections occur with relative frequency, and because a shortened petition deadline necessarily raises the same constitutional issues as those challenged here, it can be said that, unlike the settlement decision in *Illinois State Board of Education*, the Alabama ballot access scheme reflects both "a policy [the government] had determined to continue" and "a consistent pattern of behavior."  *See id.* at 188.  In fact, *Illinois State Board of Education* appears to support the Plaintiffs' position, as the Court implicitly found that the plaintiffs' first constitutional claim—that the discrepancy between city and state ballot access requirements violated the Equal Protection Clause—was not mooted by the passage of the special election.  Other courts have similarly found controversies involving challenges to state special election

procedure were not mooted when the special election concluded, which lends further support to the Court's conclusion that the case before it is not moot. *See Munro v. Socialist Workers Party*, 479 U.S. 189 (1986); *ACLU of Ohio v. Taft*, 385 F.3d 614 (6th Cir. 2004).

Finally, Bennett contends that in order for the capable of repetition, yet evading review exception to apply, there must be a reasonable expectation that the same two independent candidate plaintiffs, specifically Hall and Moser, will be subject to the same constitutional burden in a future special election. *See Weinstein,* 423 U.S. at 147 ("there was a reasonable expectation that the ***same complaining party*** would be subjected to the ***same action*** again") (emphasis added); *Norman*, 502 U.S. at 288 ("there would be every reason to expect the ***same parties*** to generate a similar, future controversy") (emphasis added). The Court acknowledges that there is conflicting law in the circuits on this issue and that there is no Eleventh Circuit case that directly resolves the conflict. *Compare Van Wie v. Pataki*, 267 F.3d 109, 114 (2nd Cir. 2001) (noting that "a tension has arisen" between cases strictly applying a "same complaining party" requirement and other cases not applying this requirement "in such a stringent manner" and ultimately holding that "in the absence of a class action, there must be a reasonable expectation that the *same* complaining party would encounter the challenged action in the future"), *with Majors v. Abell*, 317 F.3d 719, 723 (7th Cir. 2003) ("[W]hile canonical statements of the exception to mootness for cases capable of repetition yet evading review require that the dispute giving rise to the case be capable of repetition *by the same plaintiff*, the courts, perhaps to avoid complicating lawsuits with incessant interruptions to assure the continued existence of a live controversy, do not

11

interpret the requirement literally, at least in abortion and election cases.") (internal citations omitted), *and Lawrence v. Blackwell*, 430 F.3d 368, 372 (6th Cir. 2005) ("Courts have applied the capable of repetition yet evading review exception to hear challenges to election laws even when the nature of the law made it clear the plaintiff would not suffer the same harm in the future.") (citations omitted).  However, he Court does not need to resolve this conflict because Plaintiffs are able to meet the "same party requirement."

      Plaintiffs have established that there is a reasonable expectation the controversy would recur as to themselves, the same complaining parties.  Both Hall and Moser have submitted declarations stating that they intend to continue to seek public office in Alabama as an independent candidate in either a special election or regular election and that they intend to vote for future independent candidates in each special or regular election in which they are eligible to vote.  (Docs. #48-1, 48-2.)  This is sufficient evidence for the Court to find that it is reasonable to expect that both Plaintiffs will run as independent candidates or vote for independent candidates in the future; therefore, the controversy is capable of repetition as to these Plaintiffs.  Even absent this evidence, the Court finds that it is reasonably likely for Plaintiffs themselves to be involved in the same controversy in future special elections.  *See Lawrence*, 430 F.3d at 371 ("[A]lthought [the plaintiff] has not specifically stated that he plans to run in a future election, he is certainly capable of doing so, and under the circumstances it is reasonable to expect that he will do so."); *Majors*, 317 F.3d at 723 ("[I]n an election case the court will not keep interrogating the plaintiff to assess the likely trajectory of his political career.").

As both parties noted in their briefs, the Court preemptively resolved the issue currently before it during the November 19, 2013, preliminary injunction hearing. At the hearing, the Court made clear that:

> Regardless of what happens, unless there's a ruling by the Eleventh Circuit which stays this general election on December the 17th, if, in fact, this case were to come back to me after the general election, should Mr. Schoen take up this appeal, **I don't want to hear from the state that the issue is moot because the election already occurred**. I think there's case law after case law that says that - - even the *Worley* case, I believe, says that even though the election has taken place, there's still a justiciable controversy, and the only thing we're looking at is whether or not Mr. Hall's and Mr. Moser's rights have been affected. And that's what I would be looking at at that point.

Nothing has changed since this hearing. At the least, the Court has jurisdiction to hear any allegations for damages arising out of alleged violations of 42 U.S.C. § 1983, which would entitle Plaintiffs to at least nominal damages.[5] Furthermore, for the reasons stated above, the Court retains subject matter jurisdiction to hear the as-applied and facial challenges to Alabama's signature requirements as applied in the recent Special Election for the purpose of issuing a permanent injunction or declaratory judgment. Accordingly, it is hereby ORDERED as follows:

1. Bennett's Motion to Dismiss (Doc. #41) is DENIED.

2. Plaintiffs' Request for Oral Argument (Doc. #51), which the Court construes as a motion for a hearing, is DENIED AS MOOT.

---

[5] In their response brief (Doc. #44), Plaintiffs make clear they intend to file a motion for leave to file a Second Amended Complaint adding a damages claim for the violation of their rights as a result of being kept off the ballot in the December 17, 2013 Special Election.

13

3.  The stay imposed on January 27, 2014 is LIFTED.

4.  A status conference is set in this case for March 12, 2014 at 10:00 A.M. by conference call arranged by counsel for the Defendant.

DONE this the 3rd day of March, 2014.

/s/ Mark E. Fuller<br>UNITED STATES DISTRICT JUDGE